1  RICHARD S. FALCONE, Bar No. 095265
   rfalcone@littler.com
2  CHARLES CANNIZZARO, Bar No. 280895
   ccannizzaro@littler.com
3  LITTLER MENDELSON, P.C.
   18565 Jamboree Road
4  Suite 800
   Irvine, California  92612
5  Telephone: 949.705.3000
   Facsimile:  949.724.1201
6
7  Attorneys for Defendants
   SOLARFLARE COMMUNICATIONS, INC.,
8  RUSSELL STERN, and XILINX, INC.

9                UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11

12  ANDRE CHARTRAND, an individual,      Case No.  3:20-cv-01842-LAB-WVG
    and as an aggrieved employee pursuant
13  to the Cal. Labor Code's Private     **DEFENDANTS' OPPOSITION TO**
    Attorneys General Act ("PAGA"), on   **PLAINTIFF'S MOTION FOR**
14  behalf of the State of California and **REMAND TO STATE COURT**
    other aggrieved employees
15                                        DATE:  12/14/2020
                   Plaintiff,            TIME:   11:30 a.m.
16                                        CTRM:  14A
    v.                                    JUDGE: Hon. Larry A. Burns
17
    SOLARFLARE COMMUNICATIONS,
18  INC, a Delaware Corporation;
    RUSSELL STERN, an individual;        Second Amended Complaint Filed:
19  XILINX, INC., a Delaware Corporation; August 25, 2020
    and DOES 1-25, inclusive,
20
                   Defendants.
21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................. 7

II.   FACTUAL AND PROCEDURAL HISTORY .................................... 7

III.  LEGAL ARGUMENT ...................................................................... 8

    A.   PLAINTIFF'S CLAIMS ARISE UNDER FEDERAL LAW BECAUSE THEY REQUIRE THE RESOLUTION OF SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW ................ 8

        1.   PLAINTIFF "NECESSARILY RAISED" A FEDERAL ISSUE UNDER THE STATE SECRETS PRIVILEGE ............. 10

        2.   THIS CASE PRESENTS AN ISSUE OF FEDERAL LAW THAT IS "ACTUALLY DISPUTED" ........................................ 13

        3.   THE FUNDAMENTAL ISSUE IN THIS CASE PRESENTS A "SUBSTANTIAL" QUESTION OF FEDERAL LAW ............................................................... 15

        4.   THE CASE PROCEEDING IN FEDERAL COURT WILL NOT DISRUPT THE FEDERAL-STATE BALANCE .............. 18

    B.   THIS COURT ALSO HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE ...................................... 19

        1.   PLAINTIFF CONFUSES THE ASSERTION OF THE STATE SECRETS PRIVILEGE  WITH  THE SHOWING REQUIRED FOR REMOVAL TO FEDERAL COURT ........... 20

        2.   PLAINTIFF ALLEGES HE WAS INTERFERING WITH A SECRET GOVERNMENT PROGRAM ..................................... 21

        3.   DEFENDANTS ARE UNABLE TO ADMIT OR DENY IF THEY ARE A FEDERAL CONTRACTOR ............................... 24

IV.   CONCLUSION ............................................................................. 25

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almond v. Capital Props., Inc.*,
212 F.3d 20 (1st Cir. 2000) ....................................................................... 10

*Arness v. Boeing N.A.*,
997 F. Supp. 1268 (C.D. Cal. 1998) ................................................... 22, 23

*Bader Farms, Inc. v. Monsanto Co.*,
1:16-CV-299 SNLJ, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017) ......................... 17

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ....................................................................... 10

*California Shock Trauma Air Rescue v. State Compensation Ins. Fund*,
636 F.3d 538 (9th Cir. 2011) ....................................................................... 11

*Camacho v Autoridad de Telefonos de Puerto Rico*,
868 F.2d 482 (1st Cir. 1989) ....................................................................... 20

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987) ..................................................................................... 13

*City of Chi. v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997) ....................................................................................... 9

*County of Santa Clara v. Astra USA, Inc.*,
401 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................... 9, 10

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ..................................................................... 19

*El-Masri v. Tenet*,
437 F. Supp. 2d 530 (E.D. Va. 2006) ......................................................... 18

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) ................................................................. 12, 15

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006) ....................................................................................... 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*,
   463 U.S. 1 (1983) ............................................................................................... 14

*Goncalves v. Rady Children's Hospital San Diego*,
   865 F.3d 1237 (9th Cir. 2017) ......................................................................... 20

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ............................................................. 9, 11, 14, 15, 17, 18

*Gunn v. Minton*,
   568 U.S. 251 (2013) ......................................................................................... 10

*Halkin v. Helms*,
   598 F.2d 1 (D.C. Cir. 1978) ....................................................................... 12, 15

*Halkin v. Helms*,
   690 F.2d 977 (D.C. Cir. 1982) ......................................................................... 12

*Harris v. Bankers Life & Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ............................................................................. 8

*Huong Que, Inc. v. Lue*,
   150 Cal. App. 4th 400 (2007) .......................................................................... 21

*Isaacson v. Dow Chemical Co.*,
   517 F.3d 129 (2d Cir. 2008) ................................................................. 22, 23, 24

*Kasza v. Browner*,
   133 F.3d 1159 (9th Cir. 1998) ......................................................................... 12

*Lippitt v. Raymond James*,
   340 F.3d 1033 (9th Cir. 2003) ......................................................................... 16

*Louisville & Nashville R.R. Co. v. Mottley*,
   211 U.S. 149 (1908) ......................................................................................... 13

*Merrell Dow Pharms. Inc. v. Thompson*,
   478 U.S. 804 (1986) .................................................................................... 14, 15

*In re Nat'l Sec. Agency*, *Nat'l Sec. Agency Telecomms. Records Litig.*,
   483 F. Supp. 2d 934, 942 (N.D. Cal. 2007) ....................... 10, 14, 15, 18, 20, 23, 24

*Nicodemus v. Union Pac. Corp.*,
   440 F.3d 1227 (10th Cir. 2006) ......................................................................... 9

*Ormet Corp. v. Ohio Power Co.*,
    98 F.3d 799 (4th Cir. 1996) ................................................................. 10

*In re Otter Tail Power Co.*,
    116 F.3d 1207 (8th Cir. 1997) ............................................................. 13

*Price v. Pierce*,
    823 F.2d 1114 (7th Cir.1987) .............................................................. 10

*Provincial Government of Marinduque v. Placer Dome, Inc.*,
    582 F.3d 1083 (9th Cir. 2009) ............................................................. 11

*Pugh v. See's Candies, Inc.*,
    203 Cal. App. 3d 744 (1988) ............................................................... 21

*Sterling v. Tenet*,
    416 F.3d 338 (4th Cir. 2005) ............................................................... 12

*Tenet v. Doe*,
    544 U.S. 1 (2005) ......................................................................... 12, 13

*Totten v. United States*,
    92 U.S. 105 (1876) .................................... 7, 10, 11, 12, 13, 15, 16, 18, 19, 22, 23

*United States v. Reynolds*,
    345 U.S. 1 (1953) .................................................................. 11, 12, 14, 15

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983) ............................................................................ 14

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ........................................................................... 19

*Zuckerbraun v. Gen. Dynamics Corp.*,
    935 F.2d 544 (2d Cir. 1991) ............................................................ 11, 12

**Statutes**

28 U.S.C. § 1331 ................................................................................ 9, 14

28 U.S.C. §§ 1331, 1332 ......................................................................... 9

28 U.S.C. § 1441(a) ............................................................................... 9

28 U.S.C. § 1442 .................................................................................... 7

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

28 U.S.C. § 1442(a)(1)........................................................................................19, 20

Cal. Labor Code § § 2860, 2863........................................................................21

Clean Air Act .........................................................................................................10

Omnibus Crime Control and Safe Streets Act (18 U.S.C. §§ 2510-20).................20, 21

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

## I.    INTRODUCTION

This is quintessentially a federal case.  The Court need look no further than the actual allegations in Plaintiff Andre Chartrand's ("Plaintiff") complaint.  Plaintiff brings causes of action for retaliation, wrongful termination, and defamation related to his opposition to and interference with Defendant Solarflare Communications, Inc.'s ("Solarflare") alleged involvement in a secret government program to advance international espionage by transmitting spy software to Chinese customers.

Plaintiff's Motion for Remand should thus be denied for two reasons.  First, the case requires resolution of substantial, disputed issues of federal law in the form of a threshold issue of justiciability.   This Court needs to decide whether and to what extent Plaintiff's claims are justiciable or should be dismissed in light of the state secrets privilege or the rule in *Totten v. United States*, 92 U.S. 105 (1876), which precludes adjudication of claims based on alleged espionage agreements with the United States. These rules may also bar the discovery of certain evidence and information.

Second, removal of this case was proper under the federal officer removal provision—28 U.S.C. § 1442—because Plaintiff alleges that he interfered with a secret government data-gathering program that was under the direction and control of a federal government intelligence agency.   Thus, according to Plaintiff's own allegations in the complaint, Defendants Solarflare, Xilinx, Inc. ("Xilinx"), and Russell Stern ("Stern") (collectively, "Defendants") are entitled to be heard in a federal forum.

## II.    FACTUAL AND PROCEDURAL HISTORY

On February 13, 2020, an action was commenced by Plaintiff in the San Diego County Superior Court entitled *Andre Chartrand v. Solarflare Communications, Inc., et al.,* and docketed as Case No. 37-2020-00008183-CU-WT-CTL, against Defendants Solarflare and Stern.  (Pl.'s Compl., Doc. No. 1-2.)  On August 25, 2020, Plaintiff filed a Second Amended Complaint ("SAC") that alleged as follows:

> Around  2016,  Defendant  Stern  secretly  embroiled  the company in a project (dubbed the "Secret Project") involving illegal international espionage.  As part of this Secret Project,

> Stern agreed with a government intelligence agency to design Solarflare NICs embedded with spy software for transmission to Chinese customers. [Solarflare's] software would then secretly return illicitly collected data back to the intelligence agency.   This project involved international espionage in violation of numerous laws.  Solarflare received millions of dollars for this design work.  However, to conceal this activity from the company's employees, the public, and the Board of Directors, Stern hid this revenue in Solarflare's financial statements under a misnomer related to "consulting."

(Pl.'s Second Am. Compl., Doc. No. 1-18 at 6:12-20.)

Plaintiff further asserted that he confronted Defendant Stern about the Secret Project and that Stern allegedly engaged in a campaign of retaliation against Plaintiff, resulting in Plaintiff's "pretextual" termination from Solarflare, claimed deprivation of his highly valuable compensation associated with stock options and bonuses, and alleged disparagement of Plaintiff's reputation.[1]  (*Id.* at 7:5-21, 8:9-16.)  Xilinx was added as a Defendant on August 25, 2020 with the filing of the Second Amended Complaint.  (*Id.*)  On September 18, 2020, Xilinx timely filed a Notice of Removal, which was joined by all Defendants.  (Notice of Removal, Doc. No. 1.)  Plaintiff moved for remand on October 19, 2020.  (Motion for Remand, Doc. No. 8.)

## III.   LEGAL ARGUMENT

### A.   PLAINTIFF'S CLAIMS ARISE UNDER FEDERAL LAW BECAUSE THEY REQUIRE THE RESOLUTION OF SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."

---

[1] The Background section of Plaintiff's Motion is argumentative and improperly makes numerous assertions on the merits, including that he was only one of 140 worldwide engineers who were not selected for termination.  (Motion for Remand, Doc. No. 8-1 at 11:18-21.)  It is further improper to rely on evidence outside the four corners of the complaint because the "inquiry begins and ends within the four corners of the pleading" and the inquiry is "whether the document informs the reader, to a substantial degree of specificity, whether all the elements of federal jurisdiction are present."  *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 n.5 (9th Cir. 2005) (internal quotation marks omitted).  In reality, Xilinx acquired Solarflare to gain Solarflare's software capabilities.  (Declaration of Nazeem Nordeen, ¶ 3.)  Plaintiff was the Vice President ("VP") of Engineering at Solarflare, and Xilinx already had its own VP of Engineering.  (*Id.* ¶ 4.)  Xilinx would have needed to terminate the employment relationship with an existing VP of Engineering in order to hire Plaintiff.  (*Id.*)

28 U.S.C. § 1441(a). Accordingly, removal jurisdiction exists where a case filed in state court presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy. 28 U.S.C. §§ 1331, 1332.

Plaintiff's claims "arise under" federal law for purposes of 28 U.S.C. § 1331 because they require the resolution of substantial, disputed issues of federal law. Federal question jurisdiction exists not only where federal law expressly creates Plaintiff's causes of action, but it also includes circumstances where federal law sufficiently impacts Plaintiff's state-law claims even though he has not brought a federal cause of action. In 2005 in a unanimous decision, the Supreme Court reaffirmed this principle it had "recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 n.5 (2006). Such jurisdiction lies when state-law claims, like those here, "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

As the Court in *Grable* explained, this rule "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*. at 312. Even if only one of several state claims raises a substantial federal question under this rule, all of the claims may be heard in federal court. *See, e.g.*, *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (citing 28 U.S.C. § 1367(a)); *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025-26 (N.D. Cal. 2005) (citing 28 U.S.C. § 1441(c)).[2]

---

[2] For examples of cases finding "arising under" jurisdiction under the rule described in *Grable*, *see, e.g.*, *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234-37 (10th Cir. 2006) (adjudication of state-

Federal jurisdiction over a state-law claim will lie if the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) "capable of resolution in federal court without disrupting the federal-state-balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314).  All of the *Gunn* requirements for federal question jurisdiction are met in this case.

## 1.  PLAINTIFF "NECESSARILY RAISED" A FEDERAL ISSUE UNDER THE STATE SECRETS PRIVILEGE

As an initial matter, Plaintiff confuses the invocation of the state secrets privilege with the required showing for removal.  (Memo. of Points & Authorities in Support of Motion for Remand ("Motion for Remand"), Doc. No. 8-1 at 15:10-16:2, 22:1-11.)  The state secrets privilege does **not** need to be invoked ***prior to*** a determination on the issue of federal question jurisdiction as long as the United States expresses its interest to do so prior to the Court's determination.  *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 483 F. Supp. 2d 934, 942 (N.D. Cal. 2007) (discussing federal government's intention to assert state secrets privilege in opinion on federal question jurisdiction).

In his Motion for Remand, Plaintiff is arguing that the well-pleaded complaint rule requires that the federal issue in this case must be embedded within the affirmative elements of his state-law claims themselves.  (*See* Motion for Remand, Doc. No. 8-1 at 17:7-18-6.)  Although a federal defense is not sufficient to establish jurisdiction, Plaintiff's claims here will require adjudication of a substantial, disputed threshold question of justiciability—whether and to what extent the rule in *Totten* and the state-

law claims for, among other things, trespass and unjust enrichment required determination of scope of federal land grants); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-96 (2d Cir. 2005) (state-law claims for breach of contract, deceptive trade practices, fraud, and unjust enrichment turned on whether defendant violated federal statute requiring uniform rates); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806-08 (4th Cir. 1996) (claim to establish rights under contract required interpretation and application of Clean Air Act); *Almond v. Capital Props., Inc.*, 212 F.3d 20, 22-24 (1st Cir. 2000) (breach of contract claim assumed to be created by state law required interpretation of contract governed by federal law); *Price v. Pierce*, 823 F.2d 1114, 1118-20 (7th Cir.1987) (state breach-of-contract claim required resolution of third-party beneficiary status, which was governed by federal law); *County of Santa Clara*, 401 F. Supp. 2d at 1025-27 (state law claims turned on whether defendants sold drugs at prices in excess of those required by federal statute).

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

secrets privilege bar Plaintiff's claims because their very subject matter is an alleged relationship between Defendants and the federal government on national security matters. *Grable* mandates this issue should be resolved in federal rather than state court. In this regard, Plaintiff's citations to *California Shock Trauma Air Rescue v. State Compensation Insurance Fund*, 636 F.3d 538 (9th Cir. 2011), and *Provincial Government of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083 (9th Cir. 2009), are misplaced. Neither case involves the state secrets privilege, the *Totten* rule, or a threshold question of justiciability. *Marinduque* also involves the act-of-state defense where the acts of foreign sovereigns taken within their own jurisdiction are deemed valid, whereas this case involves protection of ***this country's*** military and state secrets.

Resolving Plaintiff's claims here further requires a second determination of a disputed, and unquestionably substantial, question of federal law: whether and to what extent the federal constitutionally-based privilege that protects military and state secrets, and the rule in *Totten*, which similarly protects information about espionage relationships, bars retaliation, wrongful termination, and defamation claims based on unconfirmed reports about a secret project involving the government's international surveillance. In fact, Plaintiff specifically alleges the following in his complaint:

> Around 2016, Defendant Stern secretly embroiled the company in a project (dubbed the "Secret Project") involving illegal international espionage. As part of this Secret Project, Stern agreed with a government intelligence agency to design Solarflare NICs embedded with spy software for transmission to Chinese customers. Solarflare's software would then secretly return illicitly collected data back to the intelligence agency. This project involved international espionage in violation of numerous laws. Solarflare received millions of dollars for this design work. However, to conceal this activity from the company's employees, the public, and the Board of Directors, Stern hid this revenue in Solarflare's financial statements under a misnomer related to "consulting."

(Pl.'s Second Am. Compl., Doc. No. 1-18 at 6:12-20.)

The state-secrets privilege "allows the government to withhold information from discovery when disclosure would be inimical to national security." *Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546-47 (2d Cir. 1991); *see also United States v.*

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

11.

*Reynolds*, 345 U.S. 1, 10, 18 (1953).  It protects, among other things, the government's intelligence sources and methods.  *See, e.g.*, *Sterling v. Tenet*, 416 F.3d 338, 342-46 (4th Cir. 2005) ("disclosure of intelligence-gathering methods or capabilities . . . falls squarely within the definition of state secrets" (internal quotation marks omitted)), *cert. denied*, *Sterling v. Goss*, 546 U.S. 1093 (2006); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) (the state-secrets privilege protects against "disclosure of intelligence-gathering methods or capabilities"); *Halkin v. Helms*, 690 F.2d 977, 993-94 (D.C. Cir. 1982); *Halkin v. Helms*, 598 F.2d 1, 8-9 (D.C. Cir. 1978).

The state-secrets privilege, when properly invoked, can be dispositive. Where "the very subject matter of the action . . . [is] a matter of state secret," invocation of the state-secrets privilege renders the case nonjusticiable and requires immediate dismissal. *United States v. Reynolds*, 345 U.S. at 11 n.26 (citing *Totten*); *Kasza v. Browner*, 133 F.3d 1159, 1166-67 (9th Cir. 1998); *see also Zuckerbraun*, 935 F.2d at 548 (dismissing case where "very subject matter" of the action was a state secret).  Even in cases whose "very subject matter" is not a state secret, the privilege nevertheless requires dismissal if national security concerns prevent plaintiffs from proving the *prima facie* elements of their claim, and summary judgment in favor of the defendant if those concerns prevent the defendant from invoking a valid defense.  *Kasza*, 133 F.3d at 1166-67.

The related rule articulated in *Totten* likewise presents a threshold justiciability issue of federal law.  In *Totten*, the estate of an alleged Civil War spy brought a breach-of-contract claim against the United States seeking to enforce an alleged espionage agreement.  *See* 92 U.S. at 105-06.  The Court held that the action was not justiciable because "public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential."  *Id.* at 107.  In 2005, the Supreme Court reaffirmed *Totten*, holding it "precludes judicial review in cases . . . where success depends upon the existence of a secret espionage relationship with the Government."  *Tenet v. Doe*, 544 U.S. 1, 8 (2005). The Court made clear that the law requires a threshold inquiry that may be resolved

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

12.

even before addressing jurisdiction, since the law is "designed not merely to defeat the asserted claims, but to preclude judicial inquiry" in the first instance. *Id.* at 6 n.4.

For these reasons, the application of the privilege is a threshold issue, not one that will merely lurk in the background of the case.

### 2. THIS CASE PRESENTS AN ISSUE OF FEDERAL LAW THAT IS "ACTUALLY DISPUTED"

There can be no doubt that the interpretation of the state-secrets privilege and the *Totten* rule in this case will be disputed, particularly since these rules may require dismissal of Plaintiff's action. For example, Plaintiff contends the need to adjudicate the state-secrets privilege and the *Totten* rule does not give rise to federal jurisdiction because they are defenses, not elements of Plaintiff's causes of action. (Motion for Remand, Doc. No. 8-1 at 17:17-26.) This argument, however, misconceives the nature of these doctrines and rests on an unduly narrow reading of federal question jurisdiction.

As explained above, the state-secrets privilege and *Totten* rule present threshold issues of justiciability that must be addressed ***before the merits*** of the case and thus do not fall neatly into either of the two categories of federal issues Plaintiff acknowledges: (i) elements of a plaintiff's cause of action and (ii) defenses. *See, e.g.*, *In re Otter Tail Power Co.*, 116 F.3d 1207, 1213-14 (8th Cir. 1997) (finding federal jurisdiction over case raising issues of federal Indian law even though federal issues were not strictly elements of plaintiff's cause of action under state law). Plaintiff argues that the well-pleaded complaint rule mandates that only federal issues that are elements of a cause of action can confer federal jurisdiction. (Motion for Remand, Doc. No. 8-1 at 19:20-24.)

The rule, however, is not so rigid. To be sure, the heart of the "well-pleaded complaint" rule is that a federal defense is insufficient to create federal jurisdiction. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-54 (1908); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). In most cases, the federal issue at stake will either be a federal defense or an element of the cause of action, making the *Mottley* rule and Plaintiff's suggested standard indistinguishable. However, the defense is held by

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

13.

the federal government and is unique in that it presents a threshold issue in this case totally unrelated to Defendants' interests. *Reynolds*, 345 U.S. at 7-8. In only one case of which Defendants are aware has a court considered whether a threshold federal question of justiciability that directly implicates national security concerns at the heart of federal power gives rise to federal jurisdiction.[3] *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 942 (explaining state secret issues represent controlling questions of law where there is a substantial ground for difference of opinion and that may materially advance ultimate termination of the litigation).

The Supreme Court's description of the relevant standard in *Grable*, moreover, is sufficiently broad to encompass the federal issue raised here. As the Court described, **the relevant inquiry is whether state-law claims** "*implicate significant federal issues*" or "*raise a stated federal issue, actually disputed and substantial*." 545 U.S. 308, 314 (emphasis added). Contrary to Plaintiff's suggestion, the Supreme Court has eschewed a "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims." *Id.* (internal quotation marks omitted); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("there is no 'single, precise definition'") (quoting *Franchise Tax Bd.*, 463 U.S. at 8). The Court has suggested

---

[3] Even if Plaintiffs' view of the well-pleaded complaint rule generally were accepted, it should not be applied here. It is clear that Article III's grant of federal jurisdiction over "all Cases . . . arising under . . . the Laws of the United States" would extend to this case, as it has been construed to reach "any case of which federal law potentially involves 'forms an ingredient.'" *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 n.8 (1983) (quoting *Osborn v. Bank of the United States*, 22 U.S. 738, 823 (1824)); *see also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 492 (1983). Moreover, the Court has recognized that the legislative history of the 1875 Act that was the precursor to § 1331 and the similarity between the language of § 1331 and Article III "suggest[] that the 44th Congress may have meant to confer the whole power which the Constitution conferred." *Franchise Tax Bd.*, 463 U.S. at 8 n.8 (internal quotation marks omitted). It has only been judicially created limitations—such as the well-pleaded complaint rule—that have narrowed § 1331's scope. *See Verlinden*, 461 U.S. at 494-95 (noting that § 1331 "has been continuously construed and limited in the light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy which have emerged from the [statute's] function as a provision in the mosaic of federal judiciary legislation." (internal quotation marks omitted)). In the circumstances of this case, however—where Plaintiff's retaliation, wrongful termination, and defamation claims potentially threaten to expose a secret project involving the government's international surveillance program—it strains credibility to conclude Congress would have intended to preclude federal jurisdiction.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

14.

instead that it is "the nature of the federal interest at stake" that matters, *see Merrell Dow*, 478 U.S. at 814 n.12, and endorsed a "common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue," *Grable*, 545 U.S. at 2367 (internal quotation marks and alteration omitted).

Application of that "common-sense accommodation of judgment" inevitably leads to the conclusion that issues related to the state-secrets privilege and *Totten* bar will be disputed and can only be resolved through federal law interpretation.

### 3.   THE FUNDAMENTAL ISSUE IN THIS CASE PRESENTS A "SUBSTANTIAL" QUESTION OF FEDERAL LAW

The interpretation of the state secrets privilege and the *Totten* rule further poses a "substantial" question of federal law. These rules are designed to prevent disclosure of information that would jeopardize national security. *See Reynolds*, 345 U.S. at 10; *Ellsberg*, 709 F.2d at 56 ("[T]he United States, by invoking its state-secrets privilege, may block discovery in a lawsuit of any information that, if disclosed, would adversely affect national security."). For this reason, the D.C. Circuit has noted that, if privileges were ranked by importance, the "privilege to protect state secrets must head the list." *Halkin*, 598 F.2d at 7. Indeed, "[w]hen properly invoked, the state secrets privilege is absolute" and "[n]o competing public or private interest can be advanced to compel disclosure of information found to be protected" by it. *Ellsberg*, 709 F.2d at 57; *Reynolds*, 345 U.S. at 11 ("[E]ven the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.").

Plaintiff cannot argue that remand is appropriate on the basis that "evidentiary privileges" cannot form the basis for federal jurisdiction under the embedded federal issue doctrine because it would elevate form over substance. *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 943 (explaining that "the state secrets privilege functions unlike a standard evidentiary privilege"). Here, the privilege is "not only a contested federal issue, but a substantial one," for which there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

Plaintiff's citation to *Lippitt v. Raymond James*, 340 F.3d 1033 (9th Cir. 2003), is a case that is distinguishable in this regard because adjudication of the states secret privilege as to potential evidence offered in defense of Defendants' alleged retaliatory actions against Plaintiff presents a substantial question of law. That is true even if the illegality of the alleged secret government program does not need to be proved in support of Plaintiff's retaliation claim.

Plaintiff either fails to recognize or hopes that the Court will ignore that the crux of his "well-pleaded complaint" provides the nexus to the state secrets privilege and the *Totten* rule thereby creating a "substantial" question of federal law. It is worth reviewing Plaintiff's allegations in connection with his claim of retaliation both in his SAC as well as in the brief filed in support of his pending motion to remand.

In his SAC, Plaintiff alleges the following:

> Around 2016, Defendant Stern secretly embroiled the company in a project (dubbed the "Secret Project") involving illegal international espionage. As part of this Secret Project, ***Stern agreed with a government intelligence agency*** to design Solarflare NICs embedded with spy software for transmission to Chinese customers. Solareflare's software would then secretly return illicitly collected data back to the intelligence agency. ***This project involved international espionage in violation of numerous laws***. Solarflare received millions of dollars for this design work. However, to conceal this activity from the company's employees, the public, and the Board of Directors, Stern hid this revenue in Solarflare's financial statements under a misnomer related to "consulting."

(Pl.'s Second Am. Compl., Doc. No. 1-18 at 6:12-20 (emphasis added).)

In his brief in support of his remand motion Plaintiff additionally states the following: "Plaintiff complained to his CEO, Defendant RUSSELL STERN, about the illegality of a Solarflare government project involving designing chips that allowed them to covertly intercept those transmissions." (Motion for Remand, Doc. No. 8-1 at 7:5-7.) Further, in that same brief, Plaintiff states:

> "Around late 2018, Stern asked his staff and Plaintiff for Solarflare's highly proprietary, secret code. This set off alarm bells within the company. Plaintiff confronted CEO Stern, asking whether this "is for your secret project?" Although

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

Plaintiff had not and did not work on the project, he objected, and told Stern that, as CISO, he would not do anything illegal, stating "I'm not going to jail for you or this project." Upset by this, Stern insisted, telling Plaintiff "I'm the CEO and I can do whatever I want." From then on, Stern made it his mission to retaliate against his opposition."

(*Id.* at 9:7-14.)

Plaintiff's allegations and arguments in support of remand directly question the validity of Defendants Stern's and Solarflare's alleged contract with the federal government, and Defendant Stern's alleged retaliatory acts taken to advance Solarflare's obligations to the federal government under the terms of that contract as well as Stern's alleged efforts to protect against the disclosure of the government project in question. In that regard, Plaintiff's claims are analogously similar to those of the plaintiff in *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299 SNLJ, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017).

In the *Bader* case, the Court found that although a federal question did not appear on the face of the complaint, it existed under the *Grable* analysis, holding that because the plaintiff's state law claims required examination of the actual practices of and regulations guiding a federal agency it raised a significant federal issue. *Id.* at *2-*3. Specifically, the Court found that the plaintiff's fraudulent concealment claim asserting that defendant Monsanto concealed certain material facts that led a federal agency to deregulate certain genetically modified seeds was essentially "a collateral attack on the validity of [the federal agency's] decision to deregulate the new seeds." *Id.* at *3.

The *Bader* Court determined that resolution of the issue of defendant Monsanto's alleged fraudulent concealment presented a substantial federal question holding that the plaintiffs could: " . . . only succeed . . . if they establish that the agency decision was incorrect due to [Monsanto's] fraudulent concealment." *Id.* Similarly here, in order to establish his *prima facie* case of retaliation, Plaintiff needs to prove he reasonably believed that the alleged contract between Defendant Solarflare and the federal government was "in violation of several laws," as he alleges in his complaint. In so

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

17.

doing, Plaintiff needs to establish the existence of the contract, thus implicating and collaterally challenging the legality of the federal government's actions, as well as that of Defendants and the terms of the contract including, of course, the alleged espionage, which is the crux of the alleged agreement.   In so doing, Plaintiff has raised "a substantial question of federal law" that inextricably involves the federal intelligence agency to which Plaintiff refers in his SAC and pending motion.

Nor can Plaintiff argue that the assertion of the state secrets defense is hypothetical.  (Motion for Remand, Doc. No. 8-1 at 23:5-21.)  The federal government previously filed a statement of interest prior to the motion for remand hearing in a similar case and did not assert the privilege until after federal question jurisdiction had been resolved.  *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 942, 945 (discussing federal government's intention to assert the privilege and addressing statement of interest filed by the United States).  Plaintiff's allegations related to unconfirmed reports about an alleged secret government project could result in dismissal of the action or could bar necessary evidence needed by Defendants to present their defense in this lawsuit.  As a result, the alleged international surveillance program implicates federal interests of the highest order that are sufficient to create federal jurisdiction.

### 4.   THE CASE PROCEEDING IN FEDERAL COURT WILL NOT DISRUPT THE FEDERAL-STATE BALANCE

Allowing cases involving the state-secrets privilege and the *Totten* rule to proceed in federal, rather than state, court will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  It is difficult to imagine a set of cases that more squarely implicate federal interests than those in which the disclosure of national security information is at issue.  Because the state-secrets privilege is "derived from the President's constitutional authority over the conduct of this country's diplomatic and military affairs," federal courts, rather than state courts, are uniquely situated to determine its interpretation. *El-Masri v. Tenet*, 437 F. Supp. 2d 530, 535 (E.D. Va. 2006).

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

18.

Contrary to Plaintiff's assertion, allowing cases involving the state secrets privilege or the *Totten* bar into federal court would not result in a flood gate of litigation or waste judicial resources. (Motion for Remand, Doc. No. 8-1 at 25:23-28:1.) Plaintiff initially argues that "[a] 2009 survey of reported cases found that the government invoked [the state secrets privilege] just 69 times between 1980 and 2006," and then later warns of a flood gate of litigation. (*Id.* at 16:11-12.) Plaintiff cannot have it both ways. In the end, it is unimaginable that Congress would mandate that crucial national security issues at stake here would be determined by state rather than federal courts.

## B.   THIS COURT ALSO HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE

This Court has jurisdiction for yet another independent reason. Jurisdiction exists under the federal officer removal statute, which permits removal by "[t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or any agency thereof . . . for any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). As the Supreme Court has often explained, the federal officer removal statute reflects principles of federal supremacy: The federal government "'can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court . . . the operations of the general government may at any time be arrested at the will of one of its members.'" *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1879)). The federal officer removal statute is neither "narrow" nor "limited," but should be read broadly so as not to frustrate its underlying rationale. *Id.*

This provision allows removal where (1) "[the defendant] is a 'person' within the meaning of the statute"; (2) "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims"; and (3) "it can assert a 'colorable federal defense.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)). There

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

19.

is no issue with the first element because corporations are "persons" within the meaning of the statute. *See Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (holding that corporations are persons under § 1442(a)(1)).

### 1.   PLAINTIFF CONFUSES THE ASSERTION OF THE STATE SECRETS PRIVILEGE WITH THE SHOWING REQUIRED FOR REMOVAL TO FEDERAL COURT

As stated previously, Plaintiff confuses the invocation of the state secrets privilege with the required showing for removal. (Motion for Remand, Doc. No. 8-1 at 15:10-16:2, 22:1-11.)  The state secrets privilege does not need to be invoked *prior to* a determination on the issue of federal question jurisdiction as long as the United States expresses its interest  prior to the Court's determination of jurisdiction. *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 942 (discussing federal government's intention to assert state secrets privilege in opinion addressing federal question jurisdiction).  Defendants can act on the government's behalf even if the state secrets privilege belongs to the government.  Further, there is case law holding that § 1442(a)(1) can be used by a federal contractor to effectuate removal.

For example, in *Camacho v Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482 (1st Cir. 1989), the First Circuit applied the federal officer removal statute to a federal contractor.  The court held that an action against quasi-public telephone companies for participating in a wiretap of plaintiffs' telephones in violation of Puerto Rican law was properly removed to federal district court by a federal contractor under the federal officer removal statute. 868 F.2d at 489.  The reach of § 1442(a)(1) extended to private persons because the carriers acted at the behest of federal officers conducting the wiretap pursuant to the Omnibus Crime Control and Safe Streets Act (18 U.S.C. §§ 2510-20).  *Id.*  Thus, Plaintiff's argument that remand is required because only the government may assert the privilege fails.

/ / /

/ / /

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

20.

### 2.   PLAINTIFF ALLEGES HE WAS INTERFERING WITH A SECRET GOVERNMENT PROGRAM

If accepted as true, the allegations of Plainitff's "well pleaded complaint" establish that Plaintiff was actively opposing and interfering with a secret government program to which he also claims his employer had a contractual obligation.  As such, Plaintiff's interference with this federal program allegedly resulted in the termination of his employment and forms the basis for all of his claims.

Even if Defendants were not expressly *directed* by the federal agency with which it had a contract to terminate Plaintiff's employment, because of his efforts to interfere with that contract, impliedly, Defendants as a party to the contract were required to take reasonable steps to deliver their part of the bargain to the federal government.  (CACI Jury Instruction No. 325: Breach of the Covenant of Good Faith and Fair Dealing ("In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything unfairly to interfere with the right of any other party to received the benefits of the contract.").)  Failing to do so could have resulted in a material breach of the contract by Defendants and liability therefore.  (*Id.*)

Likewise, Plaintiff, as an employee of Defendant Solarflare, had a duty to carry out tasks assigned or delegated by his employer.  Cal. Labor Code §§ 2860, 2863; *Huong Que, Inc. v. Lue,* 150 Cal. App. 4th 400, 410-11 (2007).  Failing or refusing to follow his employer's directions could result in discipline up to and including termination. *See, e.g.*, *Pugh v. See's Candies, Inc.*, 203 Cal. App. 3d 744, 769 (1988) (holding, in a case where a high-ranking managerial employee alleged he was wrongfully terminated by his employer after claiming the employer entered into an illegal contract, that ". . . an employer must have wide latitude in making independent, good faith judgments about high-ranking employees without the threat of a jury second-guessing it business judgment").

Although the reasons for Plaintiff's termination are not relevant to the Court's

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

21.

inquiry on the pending motion, what is relevant is whether Defendants had the authority based on the alleged agreement with the federal government to act to discipline the Plaintiff for his efforts to interfere with the alleged contract between Defendant Solarflare and the government.  Clearly, as a party to the alleged contract, Defendant Solarflare had that right and obligation.  By doing so, Defendant Solarflare acted consistent with its obligation to its partner-in-contract to fulfill the terms of that agreement.  In *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137 (2d Cir. 2008), the Court held that the "acting under" requirement was met when defendant chemical companies produced dioxin in Agent Orange as required by the terms of its contract with the federal government for production of a product used during war.  The Court reasoned that, in the absence of the defendant companies, the government would have had to produce the product itself ***and therefore defendant companies had received delegated authority***.  *Id.*  Through their contracts with the government to produce Agent Orange, the chemical companies assisted and helped carry out the duties or tasks of officers at the Department of Defense.  *Id.* Defendants thus had the requisite "special relationship" with the government to meet the "acting under" element of the federal officer removal statute.  *Id.*  The requirement was further met because the defendants showed that the acts for which they were being sued—the production of dioxin in Agent Orange—occurred **because of what they were asked to do by the government.**  *Id***.**

The holding in *Isaacson* stands in stark contrast to Plaintiff's citation to *Arness v. Boeing N.A.*, 997 F. Supp. 1268 (C.D. Cal. 1998).  In *Arness*, Boeing made and tested rocket engines under a federal contract with NASA and was alleged to have negligently allowed TCE and other toxic substances to enter the soil and groundwater.  *Id.* at 1270.  The state secrets privilege or the *Totten* bar were not at issue, and Boeing was further not performing a national security function impacting state or military secrets.  Boeing claimed in support of its removal that it was performing its obligations under its contract with the government and "at the direction of federal officers."  *Id.* at 1274.  The Court, however, concluded that while the government may have directed production activities,

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

22.

the government did not restrict Boeing's ability to implement safeguards for disposal. In connection with the plaintiff's claims in *Arness,* the Court determined that Boeing was not being directed by the federal government in improperly disposing of toxic material and remanded the case.

In a case involving the state secrets privilege or the *Totten* bar, defendants are often unable to admit or deny whether they were acting under the direction of the federal government. *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 943. In such cases, "defendants must rely on [plaintiff's] complaint to demonstrate that they acted under the direction of a federal officer." *Id.*

In this case, Plaintiff alleged as follows in his complaint:

> Around 2016, Defendant Stern secretly embroiled the company in a project (dubbed the "Secret Project") involving illegal international espionage. As part of this Secret Project, Stern agreed with a government intelligence agency to design Solarflare NICs embedded with spy software for transmission to Chinese customers. Solareflare's software would then secretly return illicitly collected data back to the intelligence agency. This project involved international espionage in violation of numerous laws. Solarflare received millions of dollars for this design work. However, to conceal this activity from the company's employees, the public, and the Board of Directors, Stern hid this revenue in Solarflare's financial statements under a misnomer related to "consulting."

(Pl.'s Second Am. Compl., Doc. No. 1-18 at 6:12-20.) Plaintiff further asserted that he confronted Defendant Stern about the Secret Project and that Stern allegedly engaged in a campaign of retaliation against Plaintiff, resulting in Plaintiff's "pretextual" termination from Solarflare, claimed deprivation of his highly valuable compensation associated with stock options and bonuses, and alleged disparagement of Plaintiff's reputation. (*Id.* at 7:5-21, 8:9-16.)

Similar to *Isaacson*, Defendants were allegedly producing spy software to perform a national security function to advance international espionage. Defendants were thus carrying out the express terms of their contract with the government as alleged by Plaintiff by assisting and helping to carry out the duties of officers at a government intelligence agency. As such, and based on Plaintiff's "well pleaded complaint,"

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

23.

Defendants had the requisite "special relationship" with the government to meet the "acting under" element of the federal officer removal statute.

Based on Plaintiff's own allegations, Defendants are being sued for their involvement in the secret government program.   Plaintiff's claims are based on what Defendants were asked to do by the government and were contractually bound to carry out pursuant to the contract alleged by Plaintiff.   Thus, "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." *Isaacson*, 517 F.3d at 138 (citing *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

### 3.   DEFENDANTS ARE UNABLE TO ADMIT OR DENY IF THEY ARE A FEDERAL CONTRACTOR

Contrary to Plaintiff's argument, Defendants did not deny that they are a federal contractor in any way.  (Motion for Remand, Doc. No. 8-1 at 31:25-32:1.)  Instead, in their amended Answer, Defendants denied the alleged "illegal" nature of any activity engaged in by them and also denied Plaintiff's allegation that they had failed to notify their Board of Directors and other stakeholders of their activities on behalf and at the direction of the federal government.  (First Am. Answer, Doc. No. 1-19 at 6:6-19.)

Because it is fully expected that the Government will  assert the state-secrets privilege in this case, Defendants are unable to admit or deny the allegations of the Complaint at this time.  *In re Nat'l Sec. Agency*, 483 F. Supp. 2d at 943.  Even accepting Plaintiff's allegations as true, however, the allegations themselves establish that Defendants acted at the direction of agencies or officers of the United States, or persons acting under such agencies or officers, under color of office.  As such, Plaintiff's argument based on Defendant's answer is misleading as a "red herring" at best.

/ / /

/ / /

/ / /

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000

24.

**IV.   CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Remand.

Dated:   November 30, 2020

                                            */s/Charles Cannizzaro*
                                            RICHARD S. FALCONE
                                            CHARLES CANNIZZARO
                                            LITTLER MENDELSON, P.C.
                                            Attorneys for Defendants
                                            SOLARFLARE
                                            COMMUNICATIONS, INC.,
                                            RUSSELL STERN, and XILINX, INC.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, CA  92612
949.705.3000