UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE CHARTRAND,<br><br>    Plaintiff,<br><br>    v.<br><br>SOLARFLARE COMMUNICATIONS, INC.; RUSSELL STERN; and XILINX, INC.,<br><br>    Defendants. | Case No. 20cv1842-LAB-WVG<br><br>**ORDER GRANTING MOTION TO REMAND [Dkt. 8]** |

    Plaintiff Andre Chartrand filed this action in the Superior Court of California, County of San Diego, Central Division, alleging claims against his former employer, Solarflare Communications, Inc.; its CEO, Russell Stern; and the company that acquired Solarflare, Xilinx, Inc. He contends generally that Solarflare contracted to do work that violates state privacy laws and, after Chartrand complained and refused to participate in that work, Solarflare and Xilinx retaliated by reducing his compensation and terminating his employment.

    The case proceeded in state court for seven months. Six months in, Chartrand amended his complaint to join Xilinx as a defendant. Xilinx then removed the case to this Court, contending that the alleged identity of its customer, an intelligence agency of the United States government, created

federal questions over which federal courts have jurisdiction. Specifically, Xilinx argues that Chartrand's claims implicate federal common law doctrines surrounding state secrets because Chartrand alleges that the work he complained of and refused to participate in was done under a contract with a federal government intelligence agency. Xilinx premises removal on 28 U.S.C. §§ 1441(c) and 1442(a), asserting that the federal questions in the case permit removal both because Xilinx is a federal contractor and because a federal question appears on the face of the complaint.

Chartrand moved to remand to state court. (Dkt. 8.) Defendants opposed and moved the Court to continue the submission date on the Motion for Remand by 45 days to give the government an opportunity to consider whether to assert the state secrets privilege. (Dkt. 13.) The Government subsequently appeared and submitted several requests that the Court delay ruling on that Motion, ultimately asking the Court to forbear until April 21, 2021.

On that deadline, the Government and Chartrand filed a notice indicating that Chartrand intended to move for leave to file a Third Amended Complaint. If that motion is granted, the Government has agreed not to invoke its state secrets privilege "at this time," but reserves its rights to do so in the future.

The Court finds that the only potential basis for federal jurisdiction in this case is the Government's state secrets privilege, which the Government hasn't asserted and now appears far from certain to assert in this action. The Court can't exercise subject matter jurisdiction to grant or deny a motion for leave to amend where no party with the right to remove has even intervened in the case, much less sought removal. Rather than wait for the filing of such a motion, then, the Court now resolves the Motion for Remand, **GRANTING** it and **REMANDING** this action to state court.

## DISCUSSION

### I. The Complaint Doesn't Raise a Federal Question

Xilinx can't remove under 28 U.S.C. §§ 1441(c) and 1331. Those statutes require Xilinx to demonstrate that the claims at issue arise under the Constitution, laws, or treaties of the United States. Whether a claim so arises turns on "what necessarily appears in the plaintiff's [pleading], unaided by anything alleged in anticipation or avoidance of defenses." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983), quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914).

"[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund*, 636 F.3d 538, 541 (9th Cir. 2011) ("*CALSTAR*") (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). The Court isn't permitted to consider even allegations in the complaint that aren't "not necessary to [the] plaintiff['s] cause of action." *Marshall v. Desert Properties Co.*, 103 F.2d 551, 552 (9th Cir. 1939); *see also Gully*, 299 U.S. at 113 ("[T]he complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.").

Federal questions may exist in causes of action created by federal law and in state law claims for which a federal question is nevertheless an essential element. *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314–15 (2005). Even in the latter case, though, the federal question must appear on the face of a well-pleaded complaint. *CALSTAR*, 636 F.3d at 542. "[A] state-law claim will present a justiciable federal question only if it satisfies *both* the well-pleaded complaint rule *and* . . . the federal issue . . . [is] necessary [and] actually disputed and

substantial, [and one] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* (emphasis in original). It's not enough for a state-law claim to "implicate[] significant federal issues" because federal law may bar that claim—any such issues must be a necessary part of the plaintiff's claims to justify removal under § 1441. *Id.* at 542–43 (internal marks omitted).

Xilinx identifies two federal questions that purportedly give the Court jurisdiction here: the government's state secrets privilege under *United States v. Reynolds*, 345 U.S. 1 (1953), and a federal prudential rule, first announced in *Totten v. United States*, 92 U.S. 105 (1875), barring actions in which the plaintiff's "success depends upon the existence of [a] secret espionage relationship with the government." *Tenet v. Doe*, 544 U.S. 1, 8 (2005) (citing *Totten*, 92 U.S. at 106–07). Xilinx doesn't have standing to raise the government's privilege under *Reynolds*—only the government can raise its own privilege. *Reynolds*, 345 U.S. at 7–8. The government hasn't intervened to raise the privilege, so this federal question can't support jurisdiction because it isn't actually disputed. *See CALSTAR*, 636 F.3d at 542.

The only hook left for Xilinx to hang federal question jurisdiction on, then, is the *Totten* bar's purported appearance on the face of a well-pleaded complaint. But *Totten* isn't a necessary part of Chartrand's claims. Four of them—for wages not timely paid upon termination, failure to furnish and maintain accurate and complete wage statements, defamation *per se*, and declaratory relief regarding the validity of an option waiver agreement—don't relate to the alleged relationship with the government at all. (*See* Dkt No. 1-18 ¶¶ 81–114.) The other six assert claims for retaliation, tying Chartrand's termination to his complaints about the project's alleged illegality and to his refusal to participate in what he considered an illegal project. (*See*

*id.* ¶¶ 34–80, 115–26.) These claims turn on the nature of the work that Chartrand objected to, not "the existence of a secret espionage relationship with the government." *Tenet*, 544 U.S. at 8. Because Chartrand can prove the nature of the project at issue without proving the existence of such a relationship, the lawsuit isn't "premised on [an] alleged espionage agreement[]." *Id.* The allegations regarding such an agreement aren't necessary to Chartrand's claims, so they're not part of a well-pleaded complaint and they can't support removal jurisdiction. *See Marshall*, 103 F.2d at 552 (courts applying well-pleaded complaint rule must disregard allegations unnecessary to plaintiff's cause of action).

      Xilinx's rejoinder that the *Totten* bar isn't an affirmative defense, but a "threshold question of justiciability," misunderstands the well-pleaded complaint rule. (Dkt. 10 at 10.) While that rule often operates to prevent removal based on an affirmative defense, the rule's scope isn't limited to that context.  It forecloses removal under § 1441 based on *any* matter that isn't an essential element of the plaintiff's cause of action. *See CALSTAR*, 636 F.3d at 541. And since plaintiffs don't need to prove justiciability as an element of their claims, a defendant can't remove by raising a federal justiciability issue. *See, e.g., Provincial Gov't of Marinduque v. Placer Dome*, 582 F.3d 1083, 1090 (9th Cir. 2009), ("[It's] [f]atal to the district court's removal jurisdiction" that "the act of state doctrine is implicated . . . only defensively and the complaint does not 'necessarily raise a stated federal issue, actually disputed and substantial'"), quoting *Grable*, 545 U.S. at 314; *see also Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 199 n.* (D.C. Cir. 2002) (prudential standing issues are not "substantive element[s] of [a] plaintiff['s] state common law claims" and can't support removal under § 1441).

The state secrets doctrines that Xilinx relies on aren't necessarily raised by the Complaint, while the *Reynolds* privilege belongs only to the government, which isn't a party to this case. Without a federal question necessary to one or more causes of action, the Court can't exercise removal jurisdiction under § 1441.

**II. Xilinx's Alleged Acts Weren't Under Color of Office**

Xilinx can't remove under § 1442(a), either. That statute permits a person "acting under any agency . . . or . . . officer . . . of the United States," such as a federal contractor, to remove any action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Xilinx claims federal contractor status based on Solarflare's alleged contract with the government.[1]

A federal contractor acts under color of federal office where "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims." *Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020) (internal marks and citation omitted). While the "hurdle erected by [this] requirement is quite low," *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017), clearing it requires more than showing that the defendant acted in performance of a contract with the government. *See Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 728 (9th Cir. 2015). Instead, the acts alleged must be "causally connected to the federal government's subjection, guidance, or control." *Id.* If the defendant wasn't "operat[ing] under federal supervision" when taking

---

[1] Chartrand doesn't appear to contest this imputation of federal contractor status from a subsidiary to a parent, and it appears to have some basis in his allegations, so the Court need not consider whether Xilinx can be a federal contractor by virtue of Solarflare's contract. (*See* Dkt. 1-18 ¶ 6 (alleging that Xilinx "assumed . . . all Solarflare . . . obligations").)

those acts, they weren't under color of federal office and can't support removal. *Id.*

Xilinx hasn't shown that its alleged conduct in reducing Chartrand's compensation and terminating his employment was causally connected to the federal government's subjection, guidance, or control. It doesn't contend that the government directed any of those actions or even knew about them. Nor does Xilinx offer anything to suggest that the government exercised a high degree of control over Xilinx's performance. Instead, it argues that it needed to terminate Chartrand because he was interfering with its performance under the contract. (*See* Dkt. 10 at 21 (arguing that terminating Chartrand was a "reasonable step" that Xilinx was "required to take . . . to deliver [its] part of the bargain").) Even if this were sufficient—under *Cabalce*, it's not, 797 F.3d at 728—neither Xilinx nor the Complaint provide any facts to support the conclusion that Chartrand interfered with Xilinx's performance. Chartrand alleges that he complained to Defendant Stern, who proceeded with the project nevertheless, and that Chartrand refused to work on the project. Xilinx provides no additional detail beyond the conclusory assertion that these allegations amount to interference. (Dkt. 10 at 21.) Accordingly, there's no indication that terminating Chartrand advanced Defendants' performance under the contract, as opposed to merely saving the cost of paying for an employee that wasn't doing as his employer asked.

To the contrary, Xilinx casts doubt on its own argument that Chartrand's termination was causally connected to government oversight or even performance under the alleged government contract. It asserts that, when it acquired Solarflare, "Xilinx already had its own Vice President of Engineering," Chartrand's position at Solarflare, and so "Xilinx would have needed to terminate the employment relationship with an existing VP of Engineering in order to hire [Chartrand]." (Dkt. 10-1 ¶ 4.) And it argues that

decision not to hire Chartrand was simply a matter of terminating an employee who refused to carry out assigned duties. (Dkt. 10 at 21.) Neither explanation turns on the government's involvement or even Xilinx's ability to perform under the alleged contract, and so both undermine the conclusion that Xilinx was acting under color of office in terminating Chartrand's employment.

Xilinx hasn't shown, by a preponderance of the evidence, that its termination of Chartrand was under color of federal office. Accordingly, it didn't have the right to remove this action as a federal contractor under 28 U.S.C. § 1442(a).

### III. Xilinx Can't Premise Removal on Another Entity's Unasserted Right

Xilinx contends in the alternative that the Government itself could assert federal defenses under § 1442. Xilinx presents no authority to suggest that § 1442's provision that an action "directed to any of the following [including the United States] may be removed *by them*" grants any removal right to a party not enumerated in that statute simply because the action is directed to another entity that the statute does address.[2] 28 U.S.C. § 1442(a) (emphasis added). And the mere possibility of the Government's intervention "speculation and conjecture" is insufficient to warrant removal. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *cf. Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) (federal courts are "powerless to create [their] own jurisdiction" through conjecture and hypothesis).

Nevertheless, Xilinx argues that the Court should follow *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 483 F. Supp. 2d 934 (N.D. Cal. 2007)

---

[2] The question whether the United States would be entitled to remove if it intervened in the state court action is not before the Court and the Court expresses no opinion on it.

("*In re NSA*"), in permitting removal based on the Government's potential intervention. But the court in that case relied on a finding that that the action "would inevitably be removed to federal court." *See id.* at 946–47 ("[T]he standard to invoke the futility exception is exacting, as it requires the court to find that a state court action would inevitably be removed to federal court") (citing *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991)). There's no such inevitability here—the Government states that it will *not* intervene to assert its rights "at this time" if Chartrand is permitted to file his Third Amended Complaint, and it may not ever assert those rights. (Dkt. 24 at 3.) Since the Government's subsequent removal is uncertain, the Court can't find remand futile and it can't follow *In re NSA*.

## CONCLUSION

Xilinx hasn't demonstrated that it had a right to remove this case to federal court. It can't support removal by defensively raising federal doctrines that aren't essential to Chartrand's claims. And its reliance on the federal officer removal statute is misplaced: It hasn't shown that terminating Chartrand's employment was done under the federal government's subjection, guidance, or control. Nor can it remove based on a purported right belonging to the government.

The Court lacks jurisdiction over the case. The Motion for Remand is **GRANTED**. (Dkt. 8.) The case is remanded to the California Superior Court, County of San Diego.

**IT IS SO ORDERED.**

DATED: April 22, 2021

*Larry A. Burns*
Hon. Larry A. Burns
United States District Judge